IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 21-cv-01337-PAB-KAS

KRISTEN GRAESSER,

    Plaintiff,

v.

IQVIA RDS INC., a North Carolina corporation,

    Defendant.
_____

**ORDER**
_____

This matter is before the Court on Defendant's Motion for Attorneys' Fees and Interest [Docket No. 85] filed by defendant IQVIA RDS Inc. ("IQVIA") and Plaintiff's Motion for Leave to File Sur-Reply to Defendant's Reply in Support of Motion for Attorneys' Fees and Interest [Docket No. 100]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

### I.    BACKGROUND

The relevant background facts are set forth in the Court's prior orders, *see* Docket Nos. 53 and 83, and will not be restated here except as relevant to resolving the present motions. On May 17, 2021, plaintiff Kristen Graesser filed this case asserting two claims against IQVIA: (1) a claim under the Colorado Wage Claim Act ("CWCA") alleging that IQVIA unlawfully withheld a bonus that she earned in 2020; and (2) a claim under the doctrine of promissory estoppel. Docket No. 1 at 6-8, ¶¶ 31-46. On

September 30, 2022, IQVIA moved for summary judgment on both claims. Docket No. 54.

On September 12, 2023, the Court found that IQVIA was entitled to summary judgment on the CWCA and promissory estoppel claims. Docket No. 83 at 15, 17. The Court explained that the CWCA provides, "[w]hen an employee quits or resigns such employee's employment, the wages or compensation shall become due and payable upon the next regular payday." *Id*. at 7 (quoting Colo. Rev. Stat. § 8-4-109(1)(b)). The CWCA defines "wages or compensation" as including "[b]onuses or commissions earned for labor or services performed in accordance with the terms of any agreement between an employer and employee." *Id*. (quoting Colo. Rev. Stat. § 8-4-101(14)(a)(II)). The CWCA also provides that "[n]o amount is considered to be wages or compensation until such amount is earned, vested, and determinable, at which time such amount shall be payable to the employee pursuant to this article." *Id*. (quoting Colo. Rev. Stat. § 8-4-101(14)(a)(I)).

The Court found that the parties' compensation agreement consisted of Ms. Graesser's offer letter and IQVIA's Annual Incentive Plan ("AIP") Rules Document. *Id*. at 8, 12. Although Ms. Graesser argued that her employment agreement with IQVIA included several oral promises from IQVIA that she would receive a bonus based on three performance metrics, the Court held that Ms. Graesser failed to identify any disputed material facts sufficient to support the existence of an oral agreement between the parties. *Id*. at 12-14. The Court found that it was undisputed that the offer letter stated that non-salaried compensation programs, such as the bonus program, were "subject to applicable terms, conditions and eligibility requirements." *Id*. at 14. The

2

Court also found that it was undisputed that each IQVIA team could "set parameters regarding the employees that may be eligible for bonuses, such as allowing employees that received a high enough score on their annual performance review to be eligible for a potential bonus under the AIP." *Id*. at 3-4.  The Court then determined that it was undisputed that Ms. Graesser's team only deemed an employee eligible for a bonus in 2020 if the employee received a performance rating of 1, 2, or 3, yet Ms. Graesser received a performance rating of 4.  *Id*. at 4, 14-15.  Accordingly, the Court concluded that Ms. Graesser's CWCA claim failed because it was undisputed that Ms. Graesser was not eligible for a bonus in 2020 and, therefore, she had not "earned" a bonus at the time of her resignation in January 2021.  *Id*. at 15.

Final judgment entered on September 12, 2023.  Docket No. 84.  On September 26, 2023, IQVIA filed a motion for attorneys' fees and interest pursuant to Colo. Rev. Stat. § 8-4-110.  Docket No. 85.  Ms. Graesser filed a response, Docket No. 91, and IQVIA filed a reply.  Docket No. 98.[1]  The parties stipulated to the entry of costs and the Clerk of the Court awarded IQVIA $1,740.30 in costs.  Docket Nos. 97, 99.

## II.     ANALYSIS

IQVIA argues that it is entitled to an award of attorneys' fees pursuant to Colo. Rev. Stat. § 8-4-110.  Docket No. 85 at 4-6.  IQVIA requests $119,645.10 and contends

---

[1] On December 6, 2023, Ms. Graesser filed an opposed motion for leave to file a sur-reply.  Docket No. 100.  Ms. Graesser requests the opportunity to respond to two arguments raised for the first time in IQVIA's reply: (1) IQVIA's arguments about the settlement negotiations between the parties; and (2) IQVIA's "mischaracterization of the decisions of other Courts in this District."  *Id*. at 2, ¶¶ 4-5.  The Court does not rely on these arguments in its ruling and therefore will deny Ms. Graesser's motion as moot.  *See Conroy v. Vilsack*, 707 F.3d 1163, 1179 n.6 (10th Cir. 2013) ("a district court abuses its discretion only when it both denies a party leave to file a surreply *and* relies on new materials or new arguments in the opposing party's reply brief.").

3

that this award is reasonable under the loadstar analysis. *Id*. at 6-7. Ms. Graesser argues that the Court should deny the motion because IQVIA is not entitled to recover any attorneys' fees under section 8-4-110 and the requested fees are unreasonable. Docket No. 91 at 2-9. The Court will first consider whether IQVIA is entitled to attorneys' fees pursuant to Colo. Rev. Stat. § 8-4-110.

### A. Attorneys' Fees under Colo. Rev. Stat. § 8-4-110

Under the CWCA, a prevailing employee is "presumptively entitled to attorney fees." *Lester v. Career Bldg. Acad*., 338 P.3d 1054, 1059 (Colo. App. 2014); *see also Echon v. Sackett*, No. 14-cv-03420-PAB-NYW, 2019 WL 8275344, at *11 (D. Colo. Feb. 12, 2019), *aff'd*, 809 F. App'x 468 (10th Cir. 2020). The Colorado Court of Appeals has found that the purpose of awarding attorneys' fees to a prevailing plaintiff is to "incentivize employees to enforce their rights under the CWCA." *Lester*, 338 P.3d at 1061; *see also Nieto v. Clark's Mkt., Inc*., 488 P.3d 1140, 1146-47 (Colo. 2021) (recognizing that the "CWCA's purpose is to protect employees from exploitation, fraud, and oppression" (internal quotations, alterations, and citation omitted)). In contrast, the CWCA provides that a

> court may award the employer reasonable costs and attorney fees incurred in a civil action if, within fourteen days after a written demand letter is sent to or a civil action is served on the employer for unpaid wages or compensation: (I) The employer makes full legal tender of all amounts demanded in good faith for all employees; and (II) The employees receiving such tender ultimately fail to recover a total sum that is greater than the amount the employer tendered.

Colo. Rev. Stat. § 8-4-110(1)(a)(I)-(II).[2] The CWCA "allows a court to award attorney fees to a prevailing employer in the exercise of its discretion." *Carruthers v. Carrier*

---

[2] Neither party discusses whether IQVIA ever made a "full legal tender of all amounts demanded in good faith" by the plaintiff. *See* Colo. Rev. Stat. § 8-4-

*Access Corp.*, 251 P.3d 1199, 1210 (Colo. App. 2010) (noting that an award of attorneys' fees to a prevailing employer under the CWCA is not limited to cases where the employee's claim was "frivolous"); *Hall v. Bassett & Assocs., Inc.*, No. 20-cv-01067-NRN, 2021 WL 5162555, at *2 (D. Colo. Nov. 5, 2021) (finding that an award of attorneys' fees under the CWCA is "purely discretionary").

In deciding whether to award attorneys' fees to a prevailing employer, a court should consider the following ten factors (the "*Lester* factors"):

> (1) the scope and history of the litigation; (2) the ability of the employee to pay an award of fees; (3) the relative hardship to the employee of an award of fees; (3) the ability of the employer to absorb the fees it incurred; (5) whether an award of fees will deter others from acting in similar circumstances; (6) the relative merits of the parties' respective positions in the litigation; (7) whether the employee's claim was frivolous, objectively unreasonable, or groundless; (8) whether the employee acted in bad faith; (9) whether the unsuccessful claim was based on a good faith attempt to resolve a significant legal question under the CWCA; and (10) the significance of the claim under the CWCA in relation to the entire litigation.

*Lester*, 338 P.3d at 1058-59 (citing *Carruthers*, 251 P.3d at 1211); *see also Hall*, 2021 WL 5162555, at *1-2; *Madison Servs. Co., LLC v. Gordon*, No. 09-cv-02369-MSK-KMT, 2012 WL 1044323, at *2 (D. Colo. Mar. 28, 2012). As the party seeking an award of attorneys' fees, IQVIA bears the burden of establishing that the *Lester* factors weigh in favor of an award of attorneys' fees. *See Gordon*, 2012 WL 1044323, at *3; *Hall*, 2021 WL 5162555, at *2. The Court will consider each *Lester* factor.

---

110(1)(a)(I). However, it is undisputed that plaintiff did not recover any damages in this case. *See* Colo. Rev. Stat. § 8-4-110(1)(a)(II). For purposes of this Order, the Court assumes that IQVIA satisfied the tender requirement in § 8-4-110(1)(a)(I).

5

### 1) First Factor

IQVIA argues that the first factor – the scope and history of the litigation – weighs in favor of awarding attorneys' fees, but provides no further explanation on this factor. *See* Docket No. 85 at 5. Ms. Graesser responds that the first *Lester* factor weighs against an award of attorneys' fees because this was a straightforward case, litigated efficiently by plaintiff's counsel. Docket No. 91 at 3. Ms. Graesser asserts that, before defendant filed its motion for summary judgment, the parties took three depositions and exchanged written discovery without the need for discovery hearings or expert disclosures. *Id*. (citing *Hall*, 2021 WL 5162555, at *2). In reply, IQVIA contends that plaintiff expanded the scope of this litigation by filing sur-replies, by insisting on proceeding to discovery when there was a pending motion to dismiss, and by filing a motion to certify questions of law to the Colorado Supreme Court. Docket No. 98 at 5.

The Court finds that the first *Lester* factor weighs against an award of attorneys' fees. This case was not a particularly complex lawsuit, nor did it involve extensive discovery disputes or significant motions practice. On May 17, 2021, Ms. Graesser filed her complaint. Docket No. 1. On July 16, 2021, IQVIA filed a motion to dismiss. Docket No. 8. IQVIA then filed a motion to stay discovery pending the Court's ruling on the motion to dismiss. Docket No. 28. The Court denied the motion to stay discovery on December 14, 2021. *See* Docket No. 37 at 2, 4 (explaining that "[s]tays of all proceedings in a case are . . . 'generally disfavored in this District' and are considered to be 'the exception rather than the rule.'" (quoting *Davidson v. Bank of Am. N.A.*, No. 14-cv-01578-CMA-KMT, 2015 WL 5444308, at *1 (D. Colo. Sept.16, 2015)). The Court subsequently denied IQVIA's motion to dismiss. Docket No. 53. In this case, the

parties engaged in limited discovery.  *See* Docket No. 18 at 6 (scheduling order limiting each party to 10 depositions and no more than 25 interrogatories).  Aside from the initial pre-scheduling conference, *see* Docket No. 16, the magistrate judge did not hold any discovery hearings or other pre-trial hearings in this case.  On September 30, 2022, IQVIA filed a motion for summary judgment.  Docket No. 54.  On May 25, 2023, Ms. Graesser filed a motion to certify two questions of law to the Colorado Supreme Court.  Docket No. 78.  On September 12, 2023, the Court granted IQVIA's motion for summary judgment, denied plaintiff's motion to certify questions of law to the Colorado Supreme Court as moot, and closed this case.  Docket No. 83 at 17.  Because this case involved no discovery disputes or significant motions practice, the Court finds that the first *Lester* factor weighs against an award of attorneys' fees.  *See Hall*, 2021 WL 5162555, at *2 (finding that the first *Lester* factor did not weigh in favor of the prevailing employer because "[t]here were no discovery disputes or any protracted motions practice;" rather, this case involved "a complaint, an answer, discovery, and then a motion for summary judgment").

### 2)  Second and Third Factors

The Court will consider the second and third factors – the ability of the employee to pay of an award of fees and the relative hardship to the employee – together.  *See Lester*, 338 P.3d at 1059.  IQVIA argues that these factors weigh in favor of IQVIA because Ms. Graesser is a "doctor."  Docket No. 85 at 5.  With no citation to evidence, IQVIA suggests that Ms. Graesser's prior salary at IQVIA was $187,000.  *Id*. at 5-6.  Ms. Graesser responds that IQVIA has not met its burden because IQVIA failed to put forth any evidence that Ms. Graesser is able to pay an attorneys' fee award or that a fee

award would not create hardship for Ms. Graesser.  Docket No. 91 at 4.  Ms. Graesser submits a declaration attesting that she "involuntarily" left her job at another company in February 2023 and she received unemployment benefits from February 2023 to September 2023.  Docket No. 91-1 at 2, ¶ 6.  Ms. Graesser states that, although she has done some consulting work, she has been unable to find a full-time job.  *Id*. at 3, ¶ 9.  Moreover, Ms. Graesser attests that she recently spent approximately $99,000 in legal fees related to her divorce proceedings, a civil protection order case, and her ex-husband's criminal defense case.  *Id*. at 2-3, ¶¶ 5, 7-8.  In reply, IQVIA argues that Ms. Graesser's declaration is unpersuasive under *Gordon*[3] because it contains no information about her assets, "making it impossible to determine what her resources actually are."  Docket No. 98 at 5.[4]

The Court finds that the second and third *Lester* factors weigh against an award of attorneys' fees.  IQVIA has presented no evidence that Ms. Graesser has the current ability pay $119,645.10 in attorneys' fees or that a fee award would not create

---

[3] IQVIA argues that the Court in *Gordon* rejected a similar affidavit by the plaintiff in that case.  Docket No. 98 at 5 (citing *Gordon*, 2012 WL 1044323, at *3).  IQVIA misconstrues the court's holding in *Gordon*.  The court in *Gordon* noted that plaintiff's affidavit contained "no information about his assets," but found that "as the party seeking the award of attorney fees, it is [the employer's] burden to show [plaintiff's] ability to pay."  *Gordon*, 2012 WL 1044323, at *3.  The court held that the employer failed to present any "probative evidence" as to the second *Lester* factor.  *Id*.

[4] In its reply, IQVIA argues that Ms. Graesser's LinkedIn page indicates that she has held four different medical director or consultant positions since working for IQVIA.  *See* Docket No. 98 at 4, 6 (citing Docket No. 98-1).  IQVIA asserts that, "[b]ased on a Senior Medical Director of Clinical Development job posting on Salary.com and Glassdoor, an individual in this position may receive an annual salary of $130,000 to $240,000."  *Id*. at 6.  IQVIA did not present this evidence in its motion.  A "party waives issues and arguments raised for the first time in a reply brief."  *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) (quoting *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (quotations omitted)).  Accordingly, the Court declines to consider this evidence.

significant hardship for Ms. Graesser. *See Hall*, 2021 WL 5162555, at *2 (noting that the employer, "as the moving party, has the burden to show [plaintiff's] ability to pay without incurring significant hardship"); *Gordon*, 2012 WL 1044323, at *3 (same). In contrast, Ms. Graesser has submitted a detailed declaration discussing her recent unemployment history and her substantial legal fees related to various family law issues. *See* Docket No. 91-1 at 2-3, ¶¶ 5-9. Accordingly, the Court finds that the second and third factors weigh against the imposition of a fee award.

### 3) Fourth Factor

IQVIA argues that the fourth factor – the ability of the employer to absorb the fees it incurred – weighs in favor of awarding attorneys' fees because "IQVIA, while of course a company, does not have unlimited resources and incurred reasonable fees to defend against a federal court litigation where the facts and law were clearly in its favor." Docket No. 85 at 6. Ms. Graesser responds that IQVIA is able to fully absorb its fees because IQVIA is "part of a multi-billion dollar company," IQVIA Holdings, Inc., which had revenues of 14.4 billion dollars in 2022. Docket No. 91 at 4-5 (citing Docket No. 91-2 at 6, 49-54). Ms. Graesser submits IQVIA Holdings, Inc.'s Form 10-K, filed with the United States Securities and Exchange Commission, which identifies that IQVIA is a subsidiary of IQVIA Holdings, Inc. Docket No. 91-2 at 129, 135.

The Court finds that the fourth factor is neutral. IQVIA provides no evidence to support its position, such as information about the company's revenue, profits, or assets. Although Ms. Graesser identifies the revenue of IQVIA's parent company, Ms. Graesser provides no evidence discussing IQVIA's revenue. Because neither party offers any relevant evidentiary support on the fourth factor, this factor is neutral. *See*

*Hall*, 2021 WL 5162555, at *3 (holding that the fourth *Lester* factor had no "probative value" because "[n]either party provide[d] any evidentiary support for their respective positions").

### 4) Fifth, Sixth, Seventh, and Eighth Factors

The Court will consider the fifth, sixth, seventh, and eighth factors together because these factors all pertain to the merits of the CWCA claim and Ms. Graesser's conduct. IQVIA argues that

> Similar to *Gordon*, Plaintiff unreasonably claimed she was entitled to unpaid wages under the CWCA when the express language of the agreement she sought compensation under stated she was eligible for a discretionary bonus which is indisputably not considered wages under the CWCA, as fully briefed and upheld by this Court. Plaintiff's claim was not novel, and was not a good faith attempt to resolve a significant legal question under the CWCA. Thus, an award of fees in this matter would deter other employees from bringing such [sic] claims, causing employers from spending significant fees to defend them.

Docket No. 85 at 5. In its reply, IQVIA states that the "*Gordon* court found these same factors weighed in favor of awarding the defendant its attorney fees." Docket No. 98 at 3 (citing *Gordon*, 2012 WL 1044323, at *2).[5]

Ms. Graesser argues that the sixth and seventh *Lester* factors weigh in her favor because IQVIA has failed to meet its burden of demonstrating that Ms. Graesser's CWCA claim was meritless, frivolous, objectively unreasonable, or groundless. Docket No. 91 at 6. Ms. Graesser argues that she had ample legal and factual grounds for her

---

[5] IQVIA misconstrues the holding in the *Gordon* case. In *Gordon*, the court found that the employee's CWCA claim was not "well-founded" because the company's employee incentive plan expressly stated that it was governed by the Employee Retirement Income Security Act ("ERISA") and the CWCA claim was therefore clearly preempted by ERISA. *Gordon*, 2012 WL 1044323, at *2. However, the court declined to award attorneys' fees under Colo. Rev. Stat. § 8-4-110 because the employer failed to meet its "evidentiary" burden on the other *Lester* factors. *See id*. at *2-3.

10

claim evidenced by the Court's denial of defendant's motion to dismiss and a recent formal opinion issued by the Colorado Department of Labor and Employment. *Id*. (citing Docket No. 91-4). Ms. Graesser contends that IQVIA offered no evidence that she acted in "bad faith," and therefore the eighth *Lester* factor weighs against IQVIA. *Id*. Finally, Ms. Graesser argues that the fifth factor weighs against an award of fees because ordering Ms. Graesser to pay attorneys' fees in this case would deter other employees from asserting their rights under the CWCA, which is inconsistent with the CWCA's purpose of "protect[ing] employees from exploitation, fraud, and oppression." *Id*. at 5 (quoting *Nieto*, 488 P.3d at 1146-47).

The Court finds that the sixth *Lester* factor – the relative merits of the parties' respective positions in the litigation – weighs in favor of an award of attorneys' fees because IQVIA's arguments prevailed at the summary judgment stage. *See* Docket No. 83 at 7-15 (granting summary judgment on the CWCA claim based on the undisputed facts). However, there is no evidence that Ms. Graesser acted in bad faith during this litigation, and the Court therefore finds that the eighth *Lester* factor weighs against an award of fees. *See Gordon*, 2012 WL 1044323, at *2 (finding no evidence of bad faith); *Hall*, 2021 WL 5162555, at *3 (same).

The seventh *Lester* factor – whether the employee's claim was frivolous, objectively unreasonable, or groundless – likewise weighs against IQVIA. A frivolous suit is one "based on an indisputably meritless legal theory, or whose factual contentions are clearly baseless." *Thorpe v. Ancell*, 367 F. App'x 914, 919 (10th Cir. 2010) (unpublished) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (alterations omitted)). The frivolousness standard is a "difficult standard to meet," and the Tenth

11

Circuit has cautioned that rarely will cases "be sufficiently frivolous to justify imposing attorney fees on the plaintiff." *Mitchell v. City of Moore, Okla*., 218 F.3d 1190, 1203 (10th Cir. 2000). Although IQVIA insists that Ms. Graesser's claims were unreasonable because the Court found that Ms. Graesser was only eligible for a "discretionary bonus" which does not constitute "wages" under the CWCA, *see* Docket No. 85 at 5, this argument misconstrues the Court's holding. The Court did not hold as a matter of law that IQVIA's bonus program could never constitute "wages" under the CWCA, but rather found that it was undisputed that Ms. Graesser was not eligible for a bonus in 2020 based on her performance review and therefore she had not "earned" the bonus at the time of her resignation. Docket No. 83 at 14-15. The fact that the Court found Ms. Graesser's arguments insufficient to establish the existence of an oral agreement between the parties regarding other bonus program metrics, *see id*. at 12-14, does not, standing alone, establish that Ms. Graesser's CWCA claim was frivolous. *See Thorpe*, 367 F. App'x at 920 ("In determining whether a claim is frivolous, unreasonable or groundless, a district court must avoid '*post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.'" (quoting *Christiansburg Garment Co. v. E.E.O.C*., 434 U.S. 412, 421-22 (1978)).

      IQVIA has not provided any other arguments suggesting that Ms. Graesser's claim was frivolous, objectively unreasonable, or groundless. *See Lester*, 338 P.3d at 1059. Moreover, the Court engaged in a detailed analysis of plaintiff's arguments at the summary judgment stage and never labeled the arguments frivolous, objectively unreasonable, or groundless. *See* Docket No. 83 at 7-15; *see also Jane L. v.*

*Bangerter*, 61 F.3d 1505, 1513-14 (10th Cir. 1995) (discussing how "claims dismissed on 12(b)(6) motions that receive 'careful consideration,' especially as evidenced by lengthy, detailed, and reasoned orders or opinions, are not 'groundless' or 'without foundation'"); *Gutierrez v. Cobos*, 2016 WL 8738220, at *3-4 (D.N.M. June 22, 2016) (denying attorneys' fees under 28 U.S.C. § 1988, in part, because the court never characterized plaintiff's arguments as frivolous and the court issued lengthy opinions that were more than a "cursory review").  Accordingly, the seventh *Lester* factor weighs against an award of attorneys' fees.

Finally, the Court finds that the fifth *Lester* factor – whether an award of fees will deter other employees from acting in similar circumstances – is neutral.  IQVIA argues that "an award of fees in this matter would deter other employees from bringing such claims."  Docket No. 85 at 5.  However, given that the Court found that plaintiff's claim was not frivolous or objectively unreasonable, it is unclear why an award of attorneys' fees is necessary to "deter others from acting in similar circumstances."  *See Lester*, 338 P.3d at 1059, 1061 (noting the General Assembly's instruction to "incentivize *employees* to enforce their rights under the CWCA" (emphasis added); *see also Nieto*, 488 P.3d at 1146-47 (recognizing that the "CWCA's purpose is to protect employees from exploitation, fraud, and oppression" (internal quotations, alterations, and citation omitted)).  Moreover, the CWCA explicitly defines "wages and compensation" as including earned "bonuses or commissions."  Colo. Rev. Stat. § 8-4-101(14)(a)(II).  IQVIA fails to explain how the Court's narrow factual holding, that Ms. Graesser did not earn the bonus because she was not eligible for a bonus based on her performance review, *see* Docket No. 83 at 14-15, would deter other employees from bringing CWCA

claims based on bonuses or commissions.  Accordingly, the Court affords no weight to the fifth *Lester* factor.

### 5)  Ninth Factor

IQVIA argues that the ninth factor – whether plaintiff's claim was based on a good faith attempt to resolve a significant legal question under the CWCA – weighs in favor of awarding attorneys' fees because plaintiff's claim was "not novel."  Docket No. 85 at 5.  Ms. Graesser responds that this case reflected her good faith attempt to resolve two significant legal questions: (1) "whether the Colorado Supreme Court's ruling in *Nieto* . . . extends to claims for bonuses" under the CWCA; and (2) what constitutes a "discretionary bonus" under the CWCA.  Docket No. 91 at 7.  In reply, IQVIA argues that Ms. Graesser's attempt to "compare an unearned discretionary bonus to [the] earned vacation pay" situation in *Nieto* is "misguided at best."  Docket No. 98 at 7.

The Court finds that the ninth *Lester* factor weighs in favor of IQVIA.  There is no indication that Ms. Graesser brought her claim in order to resolve a significant legal question under the CWCA.  After defendant filed its motion for summary judgment, Ms. Graesser asked the Court to certify the following two questions of law to the Colorado Supreme Court: (1) whether the principles in *Nieto* apply to cases in which a plaintiff seeks unpaid bonuses; and (2) what constitutes a "discretionary bonus" under the CWCA.  Docket No. 78 at 2-3.  However, there is no evidence that plaintiff brought this case to resolve those issues.  *See generally* Docket No. 1.  Rather, Ms. Graesser asked the Court to certify those questions in response to two arguments raised in defendant's summary judgment motion.  *See* Docket No. 78 at 2.  The Court denied plaintiff's motion

to certify as moot after finding that it was undisputed that plaintiff had not "earned" the bonus at the time of her resignation.  Docket No. 83 at 15, 17.  As a result, the ninth *Lester* factor weighs in favor of awarding attorneys' fees to IQVIA.

### 6)  Tenth Factor

IQVIA argues that the tenth factor – the significance of the CWCA claim in relation to the entire litigation – supports an award of attorneys' fees because "the entire litigation centered around Plaintiff's CWCA claim."  Docket No. 85 at 6.  Ms. Graesser responds that the tenth *Lester* factor is neutral because she asserted two claims in this case, including a CWCA claim and a promissory estoppel claim.  Docket No. 91 at 7.

The Court finds that the tenth *Lester* factor weighs in favor of awarding attorneys' fees because Ms. Graesser's CWCA claim was central to this litigation.  Ms. Graesser's complaint alleged that IQVIA violated her rights under the CWCA by withholding the bonus she earned in 2020.  Docket No. 1 at 6-7, ¶¶ 31-40.  Under the CWCA, Ms. Graesser sought back wages, statutory penalties, additional penalties for a willful violation, and reasonable attorneys' fees.  *Id*. at 2, ¶ 3.  In contrast, Ms. Graesser's promissory estoppel claim was an "alternative" theory of recovery.  *Id*., ¶ 4 ("In the alternative, the Plaintiff seeks equitable relief, including actual damages in the amount of the Incentive Plan payment that was promised to her by the Defendant, based on promissory estoppel.").  Because Ms. Graesser's CWCA claim was her principal claim and increased the amount of damages she could recover, the tenth factor weighs in favor of IQVIA.  *See Hall*, 2021 WL 5162555, at *3 (finding that the tenth factor weighed in favor of the prevailing employer because plaintiff's CWCA claim increased the amount of potential damages).

In summation, the Court finds that the sixth, ninth, and tenth factors weigh in favor of awarding attorneys' fees; the fourth and fifth factors are neutral; and the first, second, third, seventh, and eighth factors weigh against an award of attorneys' fees. As a result, the Court finds that, when balancing these factors as a whole, IQVIA has failed to meet its burden of demonstrating that it is entitled to attorneys' fees under the *Lester* factors and Colo. Rev. Stat. § 8-4-110. *See Gordon*, 2012 WL 1044323, at *3 (holding that, "in the absence of a significant evidentiary showing that an award of fees is appropriate here" under the *Lester* factors, "the Court declines to award [the employer] its attorney fees incurred in litigation of the Wage Claim Act"). Accordingly, the Court in its discretion declines to award attorneys' fees in this case under Colo. Rev. Stat. § 8-4-110.[6]

### III.   CONCLUSION

It is therefore

**ORDERED** that Defendant's Motion for Attorneys' Fees and Interest [Docket No. 85] is **DENIED**. It is further

---

[6] Because the Court finds that IQVIA is not entitled to attorneys' fees pursuant to a statute, the Court declines to analyze the parties' arguments concerning the reasonableness of the requested fees. *See* Docket No. 85 at 6-9; Docket No. 91 at 7-9; *see also Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010) (noting that each "litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise").

**ORDERED** that Plaintiff's Motion for Leave to File Sur-Reply to Defendant's Reply in Support of Motion for Attorneys' Fees and Interest [Docket No. 100] is **DENIED as moot**.

DATED September 18, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge